UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COREY FERREIRA, | |
| *Plaintiff,* | |
| v. | Civil Action No. |
| DEREK OAGLES, THOMAS ROBERTS, and FREDERICK MELLO, in their individual capacities, | |
| *Defendants.* | |

## **COMPLAINT**

### **Introduction**

1. This is a civil rights action brought by Plaintiff Corey Ferreira against three Fall River police officers. Mr. Ferreira has been a corrections officer for 12 years and also works as a real estate agent. He grew up in Fall River. On August 13, 2017, Mr. Ferreira was in the parking lot of a Fall River nightclub with a friend shortly after closing time. They were waiting for a taxi, at Defendant Mello's and another officer's direction. Defendant Derek Oagles arrived in a police car and ordered Mr. Ferreira and his friend to leave.

2. Months before, Mr. Ferreira had complained that Defendant Oagles had acted too aggressively while working paid detail during closing time at another nightclub; the next night, without provocation, Defendant Oagles—in plain clothes and presumably off duty—saw Mr. Ferreira at a nightclub, approached Mr. Ferreira, and swore at Mr. Ferreira.

3. On the night of August 13, 2017, Defendant Oagles said that he recognized Mr. Ferreira from their previous contacts. Mr. Ferreira explained to Defendant Oagles that he was waiting for a taxi, as the other officers had told him to do. Mr. Ferreira told Defendant Oagles to

leave him alone. Even though Mr. Ferreira had not acted with physical aggression, Defendant Oagles responded by striking Mr. Ferreira. Defendants Derek Oagles, Thomas Roberts, and Frederick Mello tackled Mr. Ferreira to the ground and handcuffed him. Defendants repeatedly struck Mr. Ferreira while Mr. Ferreira was handcuffed and offering no resistance. Mr. Ferreira suffered multiple serious injuries, including facial fractures with likely permanent nerve damage, multiple broken ribs, and a collapsed lung.

4.   Defendants arrested Mr. Ferreira without probable cause and caused multiple criminal charges to pend for nearly two years. Video footage from the nightclub surveillance cameras went missing. Prosecutors ultimately dropped all charges against Mr. Ferreira.

## Jurisdiction

5.   This action is brought pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over the Massachusetts torts claims.

## Parties

6.   Plaintiff Corey Ferreira is a resident of the State of Rhode Island.

7.   Defendants Derek Oagles, Thomas Roberts, and Frederick Mello were at all times relevant to this Complaint duly appointed police officers of the Fall River Police Department. Their actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Fall River. They are sued in their individual capacities.

## Facts

8.   On August 12, 2017, Mr. Ferreira and his friend went to the Cove Restaurant & Marina ("Cove") on Davol Street in Fall River. They left Cove in Mr. Ferreira's car and visited

another nearby nightclub. At closing time on August 13, Mr. Ferreira drove his friend back to Cove, where his friend's car was still parked.

9. Although Mr. Ferreira did not drink much that night, Defendant Mello, who was working paid detail at Cove, advised both Mr. Ferreira and his friend not to drive. Defendant Mello instructed Mr. Ferreira and his friend to call a taxi. Mr. Ferreira and his friend complied.

10. Mr. Ferreira and his friend provided identification to Defendant Mello and another officer present at the officers' request.

11. While Mr. Ferreira and his friend were waiting for the taxi to arrive, Defendants Oagles and Roberts arrived by police car.

12. Mr. Ferreira was familiar with Defendant Oagles. A few months earlier, Defendant Oagles, while in uniform and working paid detail, had instructed Mr. Ferreira to leave another nightclub after closing time. Mr. Ferreira had complained that Defendant Oagles's demeanor was unnecessarily aggressive. The next night, Mr. Ferreira returned to the same nightclub. Inside the nightclub, Defendant Oagles approached Mr. Ferreira. Defendant Oagles was in plain clothes and appeared to be off duty. Defendant Oagles asked Mr. Ferreira if he recognized him. Mr. Ferreira said he did not. Defendant Oagles told Mr. Ferreira that he was the police officer from the night before and that Mr. Ferreira was "a real f**king a*****e." Mr. Ferreira told Defendant Oagles that he was not looking for a fight. Mr. Ferreira's friends intervened. The situation was diffused.

13. On August 13, 2017, Mr. Ferreira was waiting for the taxi with his friend when Defendants Oagles and Roberts arrived.

14. Defendant Oagles told Mr. Ferreira and his friend to leave the parking lot. Defendant Oagles said Mr. Ferreira and his friend were loitering.

15. Mr. Ferreira told Defendant Oagles that he and his friend were waiting for a taxi, as Defendant Mello and another officer present had instructed them to do.

16. Defendant Oagles said he recognized Mr. Ferreira. He referenced his previous contacts with Mr. Ferreira.

17. Mr. Ferreira told Defendant Oagles to leave him alone and used an expletive.

18. Mr. Ferreira's arms were at his side. He was not clenching his fists.

19. Defendant Oagles struck Mr. Ferreira. Defendants Oagles, Roberts, and Mello pulled Mr. Ferreira to the ground.

20. As a corrections officer himself, Mr. Ferreira knew that the best thing to do at this moment was to offer no resistance. Mr. Ferreira quickly put his hands behind his back. Officers handcuffed Mr. Ferreira.

21. After Mr. Ferreira was handcuffed, Defendants Oagles, Roberts, and Mello struck Mr. Ferreira on his side multiple times.

22. Mr. Ferreira's friend stood back, pursuant to the fourth officer's orders.

23. Mr. Ferreira was brought to his feet and escorted to the rear of a police car.

24. At the rear of the police car, Defendant Oagles struck Mr. Ferreira on his face, head, and neck multiple times. Mr. Ferreira was still handcuffed.

25. Mr. Ferreira could feel, smell, and taste his own blood. His hands were bound. There was no way to defend himself from Officer Oagles's blows. He was terrified.

26. Defendants arrested Mr. Ferreira without probable cause to believe he had committed any criminal offense. No reasonable police officer would have believed that probable cause existed.

27. Mr. Ferreira requested medical attention. Defendant Oagles initially refused.

28. Defendants Oagles and Roberts eventually transported Mr. Ferreira to Charlton Memorial Hospital.

29. At the hospital, Mr. Ferreira was diagnosed with a facial fracture.

30. Mr. Ferreira told a nurse that the officers had "sucker punched" him and "beat [him] up for no reason."

31. Mr. Ferreira was diagnosed with a facial fracture.

32. After being treated at the hospital, Mr. Ferreira was taken to the police station. Mr. Ferreira was held in custody for several hours.

33. Mr. Ferreira remained in terrible pain while at the police station.

34. Immediately after his release from police custody on August 13, 2017, Mr. Ferreira returned to Charlton Memorial Hospital for a second time that day. An emergency chest tube thoracostomy was performed. Mr. Ferreira was admitted to the hospital overnight.

35. Defendants caused Mr. Ferreira to be charged with multiple crimes, including two counts of Assault and Battery with a Dangerous Weapon, Disorderly Conduct, and Resisting Arrest.

36. There was no probable cause to prosecute Mr. Ferreira for these charges or any other charge.

37. Defendant Oagles wrote a police report about the incident. In the report, Defendant Oagles falsely claimed that Mr. Ferreira had tried to swing his clenched fist at Defendant Oagles when Defendant Oagles told Mr. Ferreira and his friend to leave the parking lot. Defendant Oagles falsely claimed that Mr. Ferreira kicked the other officers and resisted arrest. Defendant Oagles knowingly filed a false police report to justify and cover up Defendants' unreasonable and excessive use of force against Mr. Ferreira.

38. Mr. Ferreira was confident that surveillance video footage from the Cove parking lot would absolve him. He knew the video footage would show that, instead of assaulting and battery police officers, it was the officers who had assaulted and battered him. Mr. Ferreira and his criminal defense attorney went to great lengths to obtain the video footage. Mr. Ferreira spent approximately $3,500 on private investigator costs and legal fees just to locate the video footage that he believed would absolve him.

39. Mr. Ferreira's defense attorney obtained from Cove, by summons, a disc containing surveillance footage at the time of the incident. Notably absent from the disc was footage from the three surveillance cameras located in the area of the parking lot where the defendant officers had assaulted Mr. Ferreira. Representatives from Cove indicated that the video was not available because a truck was parked there at the time of the incident. However, a private detective retained by Mr. Ferreira's attorney determined that a parked truck could not have obscured the cameras' views. The video company contracted by Cove ignored Mr. Ferreira's attorney's subpoenas to produce the video. State district court judges issued two bench warrants for the owner of the video company. Still, the video was never produced.

40. The criminal charges against Mr. Ferreira remained pending for 20 months. During this time, Mr. Ferreira was required to attend numerous court hearings.

41. The Commonwealth dropped all charges against Mr. Ferreira on April 24, 2019.

42. As a result of the actions of Defendants Oagles, Roberts, and Mello, Mr. Ferreira suffered facial fractures, nerve damage in his face that is likely permanent, multiple rib fractures, a right apical pneumothorax (collapsed lung), lockjaw, and bruising. He still has a scar from the insertion of the chest tube. He continues to experience numbness and tingling on the right side of his face.

43. In addition to the physical injuries described above, Mr. Ferreira suffered emotional and financial injuries as a result of Defendants' misconduct. Although he knew that he had done nothing wrong, Mr. Ferreira feared that he would be convicted of the baseless criminal charges Defendants had brought against him. Mr. Ferreira was deeply embarrassed at being arrested and worried about how this incident would affect his professional reputation and career. Mr. Ferreira suffered financial injuries in order to defend himself against baseless criminal charges.

44. After the incident, Mr. Ferreira began to isolate himself. Mr. Ferreira grew up in Fall River and owned real estate there. But he now prefers to avoid going to Fall River because being in the city brings back memories of what Defendants did to him. He is afraid of Fall River police officers. Mr. Ferreira moved to Rhode Island to avoid Fall River. The move lengthened his commute to work.

45. The numbness and tingling in Mr. Ferreira's face, along with the scars from his chest tube, provide daily reminders of the trauma Defendants caused.

## COUNT I
## 42 U.S.C. § 1983

46. The above paragraphs are incorporated by reference.

47. Defendants Oagles, Roberts, and Mello, acting under color of law, used unreasonable force against Mr. Ferreira.

48. Defendants Oagles, Roberts, and Mello acted jointly and in concert.

49. Defendants Oagles, Roberts, and Mello acted with reckless disregard for Plaintiff's constitutional rights.

50. Defendants' actions deprived Mr. Ferreira of his clearly established right under the Fourth Amendment, as applied under the Fourteenth Amendment, to be free from unreasonable

force by police officers.

51.  Defendant Oagles would not have arrested Mr. Ferreira but for his desire to retaliate against Mr. Ferreira for questioning Defendant Oagles's conduct.

52.  Defendant Oagles's actions deprived Mr. Ferreira of his clearly established right to be free from retaliatory actions by police officers for engaging in protected First Amendment activity, as applied under the Fourteenth Amendment.

53.  As a direct and proximate result of Defendants' actions, Mr. Ferreira suffered the damages described above.

## COUNT II
### Massachusetts Tort of Assault and Battery

54.  The above paragraphs are incorporated by reference.

55.  Defendants Oagles, Roberts, and Mello committed the common law tort of assault and battery when they assaulted and battered Plaintiff Corey Ferreira without legal justification. Defendants' use of force was unreasonable and unprivileged.

56.  As a direct and proximate result of Defendants' actions, Mr. Ferreira suffered the damages described above.

## COUNT III
### Massachusetts Tort of Malicious Prosecution

57.  The above paragraphs are incorporated by reference.

58.  Defendants Oagles, Roberts, and Mello caused criminal charges to be brought against Plaintiff Corey Ferreira without probable cause and with malice. The criminal charges terminated in Plaintiff's favor when they were dismissed.

59.  As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**WHEREFORE**, Plaintiff requests that this Court:

1. Award compensatory and punitive damages;

2. Award the costs of this action, including reasonable attorneys' fees; and

3. Award such other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims.

                        RESPECTFULLY SUBMITTED,

                        For Plaintiff Corey Ferreira,
                        By his attorney,

                        /s/ Georgi J. Vogel-Rosen
                        Georgi J. Vogel-Rosen, BBO #693813
                        Bianchi Brouillard Sousa O'Connell, P.C.
                        56 Pine Street, Suite 250
                        Providence, R.I. 02903
                        Tel: 401-854-9928
                        Fax: 877-548-4539
                        Email: gvogelrosen@bbsolaw.com

DATED: June 2, 2020